·COMMONWEALTH *vs.* WEBSTER SMITH.

Suffolk.   Nov. 22, 1886.—Jan. 4, 1887.   HOLMES & GARDNER, JJ.,
absent.

At the trial of a complaint, under the Pub. Sts. c. 57, § 5, alleging that the defendant had in his possession adulterated milk, with intent unlawfully to sell the same, the evidence showed that a wagon with the defendant's name and a number on it was standing upon a public street in a city at an early hour of the morning; that the defendant's servant was on the wagon, and there were several eight-quart cans in the wagon ; that a collector of samples in the employ of the inspector of milk for the city took a sample of milk from one of the cans, which was not marked "skimmed milk;" and that an analysis of the milk taken showed that it was below the legal standard. *Held,* that there was evidence of an intent on the part of the defendant to sell the milk, which was properly submitted to the jury.

COMPLAINT under the Pub. Sts. *c.* 57, § 5, charging the defendant with having in his possession, on October 17, 1885, at Boston, adulterated milk, with intent unlawfully to sell the same. Trial in the Superior Court, before *Staples,* J., who allowed a bill of exceptions, in substance as follows :

The government called as a witness John Killeen, who testified that he was a collector of samples, employed by James F. Babcock, the inspector of milk for the city of Boston; that he did not know the defendant; that he saw the wagon of the defendant at the corner of West Canton Street and West Canton Street Place, in Boston, at about six o'clock in the morning of October 17, 1885; that the man on the wagon gave him the name of A. Campbell; that the number on the wagon was 367, and the name on the wagon was W. Smith; and that he took about a pint of milk as a sample, put it in a can of his own, labelled it, and took it to the milk inspector's office and delivered it to one Jordan, an analyst. On cross-examination, he testified that he did not see the defendant when he took the sample; that he took the sample from an eight-quart can, which was not marked "skimmed milk;" and that there were several cans in the wagon.

James O. Jordan testified that he was an analyst; that on October 17, 1885, he received from Killeen the pint sample testified to ; that he analyzed it by evaporating one teaspoonful

of it, and weighing the residual solids, and, by comparing the weight of the residuum with the original weight of the teaspoonful, he found that that teaspoonful contained 11.78 per cent of milk solids by weight.

James F. Babcock testified that he was the milk inspector of the city of Boston; that, after the complaint in this case was made, the defendant came to his office and wanted to know how the milk stood; that he told the defendant, and showed him the card on which the analysis was set down; that in July, 1885, the defendant made an application in writing for a license to sell milk in Boston, in which he stated that he lived in Lexington; that the number of his wagon was 367; and that the name of his driver was A. Campbell. The evidence in regard to the application was admitted for the sole purpose of showing that the wagon from which the sample was taken was the wagon of the defendant, and that the man who gave his name as A. Campbell was the defendant's driver.

The defendant asked the judge to rule that the government must prove a possession by the defendant personally, in the county of Suffolk, in order to succeed under this complaint. This ruling the judge declined to give.

The defendant then asked the judge to rule that the evidence in this case did not authorize a verdict of guilty. This ruling the judge also declined to give.

The defendant further asked the judge to rule as follows: " If the evidence leaves the jury in doubt whether the identical milk which was analyzed in this case was changed by the servant, or by any one else other than the defendant, after it left the defendant's possession, so that its percentage of milk solids was reduced, the jury must acquit the defendant." This ruling the judge gave, and then said to the jury: " If an agent substitutes poor milk for good, it raises an interesting question as to the master's liability. If you believe in this case that the servant changed the milk, you must acquit. If you see any evidence of that, you must give the defendant the benefit of it."

The judge then instructed the jury, among other things, as follows: " Knowledge by the defendant of the amount or percentage of milk solids in this milk is entirely unimportant. The law fixes the standard at thirteen per cent. All milk

containing less than thirteen per cent of milk solids is deemed adulterated milk. There are only two questions for the jury to pass upon, viz.: 1. Was the milk in question adulterated milk, as alleged in the complaint? 2. Did the defendant have that milk in Boston in his possession by his servant, with the intent unlawfully to sell the same?"

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*S. Hoar,* for the defendant.

*H. N. Shepard,* Assistant Attorney General, for the Commonwealth.

DEVENS, J. Even if it be conceded that the milk, which the defendant is charged with having in his possession with intent to sell, was adulterated, it is the contention of the defendant, and this is the only point argued, that the case for the government afforded no evidence of any intent on the part of the defendant to sell, even if it were true that the milk was adulterated, and was in the possession of the defendant by his servant. The wagon of the defendant, bearing his name and being also numbered, was at a corner of a public street and place in the city, in the early morning. The servant of the defendant was upon it, and there were several cans in the wagon. From one of the cans, which was an eight-quart can, the collector of milk samples took a sample, which was the alleged adulterated milk.

The fact that the wagon was that of the defendant, the place where it was, the time when it was there, the different cans and the contents, the fact that the sample collector was permitted, without objection from the defendant's servant, who had the wagon and its contents in charge, to take a sample, furnished some evidence against the defendant of an intent to sell the milk, which the jury were properly allowed to consider.

*Exceptions overruled.*